IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

UNITED STATES OF AMERICA,

v.

KISHAWN LOPEZ
         Defendant.

Case No. 1:23-CR-00018

**UNITED STATES' SENTENCING MEMORANDUM**

COMES NOW the Acting United States Attorney for the District of the Virgin Islands, Adam F. Sleeper, and Assistant United States Attorney Natasha L. Baker and submits the following Sentencing Memorandum in support of a recommended sentence at the low end of the guideline range.

## I.    INTRODUCTION

The defendant avers that he "has been able to realize how valuable is liberty and understand how much suffering he is causing to those close to him." [Ecf. No. 85]. What about the suffering to the entire Virgin Islands community? What about the lives lost, limb taken, and childhoods snatched? What about the tears, the agony, the chaos and the fear that permeates this community because of the Assault Rifles, Tech-9s, revolvers, handguns and bullets sold by this defendant? The defendant's criminal history is not only the various firearm possession and firing of guns but also, he is an accessory to the murders and assaults that has occurred as a result of a firearm that he furnished to a killer in this community. What's scary is that in the face of an arrest and boldly before law enforcement officers, the Defendnant confirmed that he would never stop procuring firearms.

## II. BACKGROUND

In October 2023, postal inspectors intercepted a package addressed to the Defendant which contained firearms components. Postal Inspectors arranged for a controlled delivery, and the Defendant himself came to the post office to retrieve the package. Postal Inspectors were aware of the Defendant's prior criminal history and his status as a felon who could not legally possess firearms.

Subsequently, law enforcement officers secured a search warrant for the defendant's home, and that warrant was executed on November 8, 2023. Upon executing the search warrant, law enforcement officers found an arsenal of weapons, totaling 31 firearms and over 5,000 rounds of ammunition. Specifically, the search warrant revealed the following items in the defendant's home: 15 "ghost" handguns, 3 revolvers, 1 Tec-9 pistol, and 12 AR-style assault rifles. Most of the rifles had a 3rd selector switch, which indicates that these rifles were being built to be able to fire automatically. Law enforcement officers also found dozens of extended magazines and 18 marijuana plants and a few ounces of marijuana scattered about the defendant's bedroom.

The Defendant was placed under arrest and subsequently given *Miranda* warnings the Defendant waiver *Miranda* and gave a full confession to law enforcement officers. The defendant admitted that the firearms belong to him. Furthermore, the defendant admitted to receiving weapons and weapons components through the mail from individuals on the mainland, and he also admitted selling firearms to people on St. Croix. The Defendant refused to tell law enforcement officers the names of people to whom he had sold firearms. When asked why he had all these firearms, despite his prior felony convictions, the defendant said he would never stop procuring firearms. Although he did not describe himself as such, the defendant appears to be a "gun nut."

## III. PRESENTENCE REPORT CALCULATION

With respect to Count One (Possession of a Firearm and Ammunition by a Convicted

Felon), the PSR establishes a base offense level of 20 pursuant to U.S.S.G.§ 2k2.1(a)(4)(B). (PSR ¶ 24). Defendant receives a 6-level increase for the 31 firearms recovered under USSG 2k2.1(b)(4)(B)(i). (PSR ¶ 25). Defendant receives a 4-level increase under U.S.S.G.§ 2K2.1(b)(4)(B)(i) (PSR ¶ 26). Defendant's guilty plea qualified him for a three-level reduction for acceptance of responsibility pursuant to U.S.S.G. §§ 3E.1(a) and (b). (PSR ¶ 32-33). The government agrees with the PSR's Guideline calculations and further agrees that Defendant's final adjusted offense level is 26, (PSR ¶ 34), which results in a recommended range of imprisonment of 78-97 months, based on his criminal history category of III. (PSR ¶ 41).

### IV. LEGAL STANDARD

This Court follows a three-step process when sentencing a defendant: (1) calculate the defendant's guideline sentence, (2) formally rule on any departure motions and state how any departure affects the defendant's guideline calculation, and (3) exercise discretion by separately considering the relevant factors outlined in 18 U.S.C. § 3553(a) when setting the sentence. *United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006).

At the third step, the Court must consider the advisory guideline range along with all the pertinent § 3553(a) factors in determining the final sentence. "The record must demonstrate the trial court gave meaningful consideration to the § 3553(a) factors. . . . [A] rote statement of the §3553(a) factors should not suffice if at sentencing either the defendant or the prosecution properly raises 'a ground of recognized legal merit (provided it has a factual basis)' and the court fails to address it." *United States v. Cooper*, 437 F.3d 324, 329-30 (3d Cir. 2006) (citations omitted). The Government explains below its view of the proper consideration in this case of the advisory guideline range and of the § 3553(a) factors, which supports a sentence at the low end of the guideline range.

Consideration of all the sentencing factors set forth in 18 U.S.C. § 3553(a) suggests that the United States' recommended sentence is appropriate in this case.

The 18 U.S.C. § 3553(a) factors include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed
   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
   (B) the need to afford adequate deterrence to criminal conduct;
   (C) to protect the public from further crimes of the defendant; and
   (D) to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner;

18 U.S.C. § 3553(a). Additionally, the Court must consider the kinds of sentences available, the range set forth by the Guidelines, any pertinent policy statements by the Sentencing Commission, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to any victims of the offense. *Id.*

A. The Nature and Circumstances of the Offense

In 2018, the United Nations released a report naming the territory as the new murder capital in the Caribbean. According to a 2020 ATF report, Puerto Rico and the USVI's gun death rates outpace the rates of all 50 states, largely fueled by gun trafficking and the use of illegal firearms. Also according to an ATF report, in 2020, the USVI was the second leading importer of firearms recovered by law enforcement among all states and territories. It is clear from the evidence in this case that the defendant is a source of the problem.

The defendant here possessed approximately 31 firearms and dozens of extended magazines to include 15 "ghost" handguns, 3 revolvers, 1 Tec-9 pistol, and 12 AR-style assault rifles. Most of the rifles had a 3rd selector switch, which indicates that these rifles were being built

to be able to fire automatically.  (See attached exhibits).  Additionally, the defendant home contained masks, law enforcement paraphernalia, large sums of cash and drugs.

    B. History and Characteristics of the Defendant

The defendant is a 35-year-old resident of Estate Upper Love, St. Croix.  The Defendant is essentially a dangerous career criminal who by his own admission will not stop.  In 2010, defendant drove near the Carambola Golf Course and opened fire upon two innocent bystanders.  The Defendant was sentenced to 5 years incarceration with 4.5 years suspended and placed on supervised probation.  While on supervised probation, in 2011, the defendant was arrested for possession of a firearm as a felon. The defendant convicted by the District Court in 2012 and sentenced to 15 months imprisonment with 3 years of supervised release.

Either while still on supervised release or shortly thereafter, the defendant was again arrested for fleeing from a traffic stop and firing a pistol at the VIPD officers who were pursuing him.  The defendant was convicted of misdemeanor reckless endangerment and sentenced to 6 months imprisonment.  In the instant case the Defendant is found residing in a home filed with drugs and guns.

In the presentence report, the defendant represented that he had a relatively normal and safe childhood.  He recognized the hard work of his mother being a farmer raising seven children.  He also acknowledged that he was heartbroken by the loss of his brother who was killed by a gun.  Nevertheless, the defendant still chooses to facilitate the infiltration of guns and crime in the territory.

    C. Reflecting the Seriousness of the Offense, Promoting Respect for the Law, and Providing Just Punishment for the Offense

Gun violence has crippled our territory and is of extreme local and national importance.  When gun crimes occur, the community ask the question: "How are guns getting into the

territory?" Here is a prime example. The community expects that justice would punish perpetrates in a manner that would deter others. To address the gun crime problem in the USVI, the VI Legislature instituted strict penalties for gun possession which includes a 10-year mandatory minimum sentence for possession and a 15-year mandatory minimum sentence for possession during a crime of violence. While the defendant is not facing any mandatory minimums, the sentence should reflect the seriousness of this crime.

D. Affording Adequate Deterrence to Criminal Conduct and Protecting the Public from Further Crimes of the Defendant

The need for adequate deterrence of this type of crime is important. However, it does not seem that this defendant will be deterred. Nevertheless, a strong sentence will send a message to the community that these crimes are forbidden.

V.   CONCLUSION

The government submits that consideration of the factors under 18 U.S.C. § 3553(a) supports the recommended sentence, based on the nature of this crime, the defendant's history and characteristics, the need to reflect the seriousness of the crime and promote respect for the law, the need for deterrence, the need to protect the public from future crimes of the defendant, and the need to avoid disparity in sentencing. This sentence is sufficient but not greater than necessary to comply with the goals of 18 U.S.C. § 3553(a).

Date: September 19, 2025

ADAM F. SLEEPER
ACTING UNITED STATES ATTORNEY

By: /s/ Natasha L. Baker
    NATASHA L. BAKER
    ASSISTANT U.S. ATTORNEY
    5500 Veteran's Drive, Suite 260
    St. Thomas, VI 00802-6214
    TEL: (340) 774-5757
    EMAIL: Natasha.baker@usdoj.gov